IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

DAVID KERSH,                              )    CIVIL NO. 09-00049 JMS/BMK
                                          )
              Plaintiff,                  )    ORDER GRANTING
                                          )    DEFENDANTS' MOTION FOR
       vs.                                )    SUMMARY JUDGMENT
                                          )
MANULIFE FINANCIAL                        )
CORPORATION, a foreign corporation,       )
JOHN HANCOCK FINANCIAL                    )
SERVICES, INC. aka JOHN                   )
HANCOCK LIFE INSURANCE                    )
COMPANY (USA), a foreign                  )
corporation, and NORTH AMERICAN           )
LIFE ASSURANCE CO., a foreign             )
corporation, JOINTLY AND                  )
SEVERALLY,                                )
                                          )
              Defendants.                 )
_____   )

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

On February 4, 2009, Plaintiff David Kersh ("Plaintiff") filed this

action against Defendants Manulife Financial Corporation ("Manulife"), John

Hancock Financial Services, Inc. aka John Hancock Life Insurance Company

(USA) ("John Hancock"), and North American Life Assurance Co. ("NALA"),

(collectively, "Defendants"), asserting state law claims stemming from a life

insurance policy Plaintiff purchased on March 20, 1978.  Defendants assert that

Plaintiff purchased a whole life insurance policy requiring annual payments and that the policy lapsed in 1984 after Plaintiff stopped making payments. In comparison, Plaintiff asserts that he purchased a universal life insurance policy requiring him to make certain payments within the first seven years of the policy, and that the policy is paid in full.

Currently before the court is Defendants' Motion for Summary Judgment in which they argue, among other things, that Plaintiff's claims are time-barred. Based on the following, the court finds that there is no genuine issue of material fact that all of Plaintiff's claims are time-barred and GRANTS Defendants' Motion for Summary Judgment.

## II. BACKGROUND

**A.    Factual Background**

***1.    Plaintiff's Assertions Regarding the Insurance Policy***

According to Plaintiff, he received a universal life insurance policy from Defendants. Specifically, in 1978 he approached Max Wayburn, a friend and insurance agent with NALA, to obtain a universal life insurance policy in which payments needed to be made in four out of seven years to be paid in full. Max Wayburn Decl. ¶¶ 1-4. Wayburn was aware that Plaintiff was not interested in whole life insurance (requiring payments during the entire lifetime of the insured),

and that Plaintiff was only interested in either term life insurance through B'nai Brith or a "four year and out" universal life insurance policy. *Id.* ¶ 11. As a result, Wayburn offered Plaintiff a $200,000 life insurance policy with NALA that allowed Plaintiff to pay $16,960 any time within the first seven years (or four payments of $4,240 in any four of the first seven years) for the policy to be paid in full. *Id.* ¶¶ 6-7. Plaintiff asserts that he made four full premium payments by May or June 1981, resulting in a fully-paid life insurance policy. *See* Wayburn Decl. ¶ 15; Pl.'s Ex. 3.

## 2. *Defendants' Assertions Regarding Plaintiff's Life Insurance Policy*

According to Defendants, Plaintiff did not receive a universal life insurance policy and Plaintiff may have confused the insurance policy he received with a tax concept providing that so long as a policyholder pays the annual premium for four of the first seven years of a life insurance policy, the policy becomes tax qualified. *See* David Crawford Decl. ¶ 34; Defs.' Ex. H. Rather than a universal life insurance policy, Defendants[1] assert that a review of their files shows that Plaintiff purchased a participating whole life insurance policy requiring premium payments for the life of the policy. *See* Crawford Decl. ¶¶ 11-12.

---

[1] In 1996, NALA became defunct after it amalgamated with Manulife, and in 2004 John Hancock became an indirect wholly owned subsidiary of Manulife. *See* Doc. No. 60-2, Crawford Decl. ¶¶ 4, 7.

Defendants have been unable to find a copy of Plaintiff's policy and assert that NALA may not have forwarded Manulife a copy due to document retention policies and because they believed the policy had lapsed. *See* Souzan Sarras Decl. ¶¶ 6-7; Crawford Decl. ¶¶ 10. Defendants' records, however, nonetheless indicate that Plaintiff purchased a whole life insurance policy. For example: (1) a data sheet outlines that the policy was a whole life policy with an annual premium of $4,242, *see* Defs.' Exs. A (data sheet), B (explanation of codes); Crawford Decl. ¶¶ 14-16 (explaining codes on data sheet); (2) NALA did not offer universal life insurance policies in the United States until 1985, Crawford Decl. ¶¶ 39-40; Defs.' Ex. J (announcing universal life insurance policies in the United States); and (3) Plaintiff's $4,242 per year premium was consistent with NALA's whole life insurance rates and policies offered to other similarly-situated people. Defs.' Exs. C (product manual explaining rates), I (sample policy); Crawford Decl. ¶¶ 18-20, 36-38.

According to Defendants' records, Plaintiff made two full premium payments totalling $8,484 and a partial payment of $250. *See* Defs.' Ex. F; Crawford Decl. ¶ 25. Sometime in 1983, Defendants advised Plaintiff via letter that additional payments were needed to prevent the policy from terminating, and in response the $250 payment was made. *See* Defs.' Ex. N (letter from Plaintiff

discussing letter he received from Defendants).  Ultimately, however, no further payments were received and the policy lapsed on February 20, 1984 after automatic premium loans and dividends were exhausted.  *See* Defs.' Exs. D (providing rates to calculate automatic premium loans from a policy); G (showing calculations for lapse of policy); Crawford Decl. ¶¶ 19-21, 25-30 (explaining calculation of lapse of policy).

### 3. *Plaintiff's Communications with Defendants*

Starting in 1997, Plaintiff began challenging Defendants' assertions that the policy has lapsed.  Defs.' Concise Statement of Facts ("CSF") ¶ 7.[2]  For example, in October 1997, Plaintiff made express allegations that he had been "defrauded" or "lied to" by NALA and/or Manulife.  *Id.* ¶ 10.  In response, Defendants have been explaining the nature of the policy -- and why it lapsed -- to Plaintiff since 1997.  *Id.* ¶ 7; Crawford Decl. ¶¶ 23-24 (explaining documents provided to Plaintiff); Defs.' Exs. E, F (documents provided to Plaintiff).  Indeed, as early as 1997, Manulife sent several letters to Plaintiff explaining that he had purchased a whole life policy requiring him to pay premiums payable for his entire life and that the policy had therefore expired.  *See* Defs.' Exs. H, K, L, M; *see also* Defs.' Ex. N (Plaintiff's response to a letter).

---

[2]  Where a fact is undisputed, the court cites directly to Defendants' CSF.

As early as April 28, 1998, Plaintiff was aware that NALA had terminated the policy in 1984. Defs.' CSF ¶ 11. Upon receipt of an April 28, 1998 letter providing this information, Plaintiff "was really upset and emotional that they were trying to take my money and tell me I don't have a policy . . . . I probably called them crooks. They stole my money and they're defrauding me, and I was extremely upset that day." *Id.* ¶ 13. As a result, Plaintiff began to threaten filing suit against Defendants regarding the policy. *Id.* ¶ 8.

In or around January 27, 2003, Plaintiff alleged that "someone screwed around with this policy and faked it and lied to me" such that he became "extremely upset and really, really upset over this." *Id.* ¶ 14. As of January 31, 2003, however, Defendants informed Plaintiff that they considered the matter closed because they had already endeavored to answer Plaintiff's questions regarding his policy, and, at Plaintiff's request, provided duplicates of documents previously provided. *Id.* ¶ 9.

## B.     Procedural Background

Plaintiff filed this action on February 4, 2009, and his First Amended Complaint ("FAC") asserts claims titled: (1) Breach of Contract (Count I); (2) Unfair Business Practices -- HRS § 480-2 (Count II); (3) Recklessness (Count

III);[3] (4) Misrepresentation (Count IV); and (5) Intentional Infliction of Emotional Distress ("IIED") (Count V).

On January 12, 2011, Defendants filed their Motion for Summary Judgment. Plaintiff filed his Opposition on March 21, 2011, and Defendants filed their Reply on March 28, 2011. A hearing was held on April 11, 2011. On May 9, 2011, the parties submitted supplemental briefing regarding accrual of Plaintiff's breach of contract claim and the statute of limitations. Defendants filed a further supplemental reply on May 13, 2011.

## III.  STANDARD OF REVIEW

Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Rule 56(a) mandates summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999).

"A party seeking summary judgment bears the initial burden of

---

[3]  At the April 11, 2011 hearing, Plaintiff conceded that there was no such thing as a "recklessness" claim. The court therefore GRANTS Defendants' Motion for Summary Judgment as to this claim.

informing the court of the basis for its motion and of identifying those portions of

the pleadings and discovery responses that demonstrate the absence of a genuine

issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th

Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's*

*Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has

carried its burden under Rule 56[(a)] its opponent must do more than simply show

that there is some metaphysical doubt as to the material facts [and] come forward

with specific facts showing that there is a *genuine issue for trial*." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87 (1986) (citation and internal

quotation signals omitted); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

247-48 (1986) (stating that a party cannot "rest upon the mere allegations or

denials of his pleading" in opposing summary judgment).

       "An issue is 'genuine' only if there is a sufficient evidentiary basis on

which a reasonable fact finder could find for the nonmoving party, and a dispute is

'material' only if it could affect the outcome of the suit under the governing law."

*In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson*, 477 U.S. at

248). When considering the evidence on a motion for summary judgment, the

court must draw all reasonable inferences on behalf of the nonmoving party.

*Matsushita Elec. Indus. Co.*, 475 U.S. at 587; *see also Posey v. Lake Pend Oreille*

*Sch. Dist. No. 84*, 546 F.3d 1121, 1126 (9th Cir. 2008) (stating that "the evidence

of [the nonmovant] is to be believed, and all justifiable inferences are to be drawn

in his favor." (citations omitted)).

## IV. **DISCUSSION**

Defendants argue that all of Plaintiff's claims are barred by the statute

of limitations.[4]  Plaintiff opposes Defendants' arguments, and also argues that the

court should deny Defendants' Motion pursuant to Rule 56(d) to allow for more

discovery.  The court first addresses Plaintiff's Rule 56(d) request, and then

addresses Defendants' arguments as they relate to each claim.

### A.     **Plaintiff's Rule 56(d) Request**

Federal Rule of Civil Procedure 56(d) provides:

When Facts Are Unavailable to the Nonmovant.  If a
nonmovant shows by affidavit or declaration that, for

---

[4]  Defendants also originally sought summary judgment on the grounds that Plaintiff
received a whole life insurance policy requiring payments throughout his lifetime, but at the
April 11, 2011 hearing Defendants' counsel conceded that genuine issues of material fact exist.
Defendants make this concession for good reason -- both parties lost their copies of the insurance
policy some time over the last thirty years since Plaintiff received the policy in 1978 such that
the court would need to rely on parol evidence to determine the parties' agreement.  *See* 4 Corbin
on Contracts § 23.10 (1998) (explaining that "[i]f the requirements of the statute of frauds are
satisfied by a signed contract or memorandum, the contract remains enforceable even though the
writing is lost or destroyed.  The contents of the writing can then be proved by parol testimony
and the contract enforced"); *see also* Restatement (Second) of Contracts § 137; *Wolters v.
Redward*, 16 Haw. 25, 1904 WL 1319, at *2 (Haw. Terr. 1904).  And because both parties
submitted evidence supporting their positions regarding the terms of the policy (see above), a
genuine issue of material fact exists regarding whether the policy was a whole life or universal
life insurance policy.

specified reasons, it cannot present facts essential to
justify its opposition, the court may:
>    (1) defer considering the motion or deny it;
>    (2) allow time to obtain affidavits or declarations
>    or to take discovery; or
>    (3) issue any other appropriate order.

Under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in

affidavit form the specific facts it hopes to elicit from further discovery; (2) the

facts sought exist; and (3) the sought-after facts are essential to oppose summary

judgment." *Family Home & Fin. Ctr. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d

822, 827 (9th Cir. 2008); *see also Tatum v. City & County of S.F.*, 441 F.3d 1090,

1100 (9th Cir. 2006).[5] "Failure to comply with these requirements 'is a proper

ground for denying discovery and proceeding to summary judgment.'" *Family*

*Home & Fin. Ctr.*, 535 F.3d at 827 (quoting *Brae Transp., Inc. v. Coopers &*

*Lybrand*, 790 F.2d 1439, 1443 (9th Cir. 1986)); *see also Tatum*, 441 F.3d at 1100

(stating where a party does not satisfy the requirements of Rule 56(f), a district

court acts within its discretion in denying the motion).

  Although Plaintiff submitted the declaration of his counsel, the only

statement arguably related to the Rule 56(d) request is that "in the alternative, the

---

[5] Rule 56(d), as quoted, became effective December 1, 2010, and "carries forward
without substantial change the provisions of former subdivision (f)." *See* Rule 56 Advisory
Committee Notes, 2010 Amendments. The court therefore interprets the new rule by applying
precedent discussing former Rule 56(f).

nature of the case will require a substantial amount of discovery for the total truth of this matter to be submitted to the trier of the facts." Grant Kidani Decl. ¶ 3. This statement fails to explain the specific facts Plaintiff hopes to elicit from discovery, that the facts he seeks exist, and that the facts are essential to his Opposition. Plaintiff has therefore failed to carry his burden in seeking a Rule 56(d) request.

Plaintiff's Opposition provides a little more detail regarding his Rule 56(d) request, and even if the court were to consider these arguments despite not being presented in an affidavit, they still do not address the relevant inquiries. Rather, Plaintiff generally asserts that he needs more time to oppose the Motion for Summary Judgment because Defendants produced additional documents to Plaintiff on March 14, 2011, pursuant to an Order Granting in Part and Denying in Part Plaintiff's Motion to Compel Discovery, and that "Plaintiff has not had the time to properly investigate this matter or to fully defend the case and will be evaluating the recent supplemental production of documents sent." Pl.'s Opp'n at 18. This argument still fails to explain what additional facts Plaintiff believes discovery will uncover and how those facts are essential to Defendants' Motion for Summary Judgment. Without addressing these issues, Plaintiff has provided the court no reasoned basis to grant Plaintiff's request.

The court therefore DENIES Plaintiff's Rule 56(d) request for a continuance.

**B.     Defendants' Motion for Summary Judgment**

*1.     Breach of Contract (Count I)*

Breach of contract claims are subject to a six-year statute of limitations.  *See* Haw. Rev. Stat. ("HRS") § 657-1(1) (explaining that an action for breach of contract "shall be commenced within six years next after the cause of action accrued, and not after").  This six-year period generally begins upon breach of the contract.  *See Lindner v. Meadow Gold Dairies, Inc*., 515 F. Supp. 2d 1141, 1151-52 (D. Haw. 2007); *see also Au v. Au*, 63 Haw. 210, 219, 626 P.2d 173, 180 (1981) ("Normally, the statute of limitations begins to run on a contract when the contract is breached.").

Viewing the facts in a light most favorable to Plaintiff, in 1978 Plaintiff entered into the policy, which required Plaintiff to pay $16,960 any time within the first seven years (or four payments of $4,240 in any four of the first seven years) for the policy to be paid in full and for Defendants to be obligated to pay Plaintiff's heirs $200,000 upon his death.  Wayburn Decl. ¶¶ 6-7.  According to Plaintiff, he fully paid the policy by May or June of 1981 such that Defendants are obligated to pay $200,000 upon his death.  *See* Pl.'s Ex. 3.  Yet in 1983,

Plaintiff received a letter from Defendants requesting additional payments, Defs.'

Ex. N, and by no later than 1997, Plaintiff clearly knew Defendants' position that

the policy was terminated.  Defs.' CSF 7.

Based on these facts, Defendants argue that a breach would have

occurred, and the statute of limitations began, when they notified Plaintiff that

additional premiums were required to maintain the policy.  Defs.' Suppl. Br. at 4-5.

In comparison, Plaintiff argues that the doctrine of anticipatory repudiation applies,

allowing Plaintiff to bring suit at *any* time until six years after Defendant fails to

perform under the policy (*i.e.*, six years after Plaintiff's death).  After careful

consideration, the court determines that the law has developed two different

approaches to addressing this issue, neither of which affords Plaintiff relief.

The first approach can be explained by an analysis of the doctrine of

anticipatory repudiation.  An anticipatory repudiation refers to a breach of contract

"committed before the time specified for performance . . . has arrived."  17A Am.

Jur. 2d § 716; *see also* Restatement (Second) of Contracts § 250.  Where the

doctrine of anticipatory repudiation applies, the injured party has the option to "sue

either when the anticipatory repudiation occurs or at the later time for performance

under the contract."  1 Calvin W. Corman, *Limitations of Actions* § 7.2.1, p. 488

(1991).  Such choice affects the statute of limitations -- the statute of limitations

accrues from either the date performance should occur, or if the plaintiff chooses to bring an action earlier, the date of such election. *See* 54 C.J.S. Limitations of Action § 190 (2010); *see* 1 Calvin W. Corman, Limitations of Actions § 7.2.1, p. 488-89 ("[I]f the aggrieved party elects to place the repudiator in breach before the performance date, the accrual date of the cause of action is accelerated from time of performance to the date of such election."); *see, e.g.*, *Fraconia Assocs. v. United States*, 536 U.S. 129, 144 (2002); *Total Control, Inc v. Danaher Corp.*, 359 F. Supp. 2d 387, 393-94 (E.D. Pa. 2005).

But the doctrine of anticipatory repudiation is more limited than Plaintiff argues -- the doctrine applies only where both parties to the contract have not fully performed. Specifically, the Restatement (Second) of Contracts § 253[6] provides that "[w]here an obligor repudiates a duty before he has committed a breach by non-performance *and before he has received all of the agreed exchange for it*, his repudiation alone gives rise to a claim for damages for total breach." (emphasis added). *See also* 17A Am. Jur. 2d §§ 720-21 (explaining that some

---

[6] Although Hawaii courts have not specifically cited this section, Hawaii courts generally follow the Restatement (Second) of Contracts. *See, e.g.*, *Weinberg v. Dickson-Weinberg*, 123 Haw. 68, 79-80, 229 P.3d 1133, 1144-45 (2010) (discussing Restatement (Second) of Contracts § 217); *Exotics Hawaii-Kona, Inc. v. E.I. Du Pont De Nemours & Co.*, 116 Haw. 277, 289, 172 P.3d 1021, 1033 (2007) citing Restatement (Second) of Contracts § 164); *Jou v. Dai-Tokyo Royal State Ins. Co.*, 116 Haw. 159, 169, 172 P.3d 471, 481 (2007) (discussing and applying Restatement (Second) of Contracts § 302).

courts hold that the doctrine of anticipatory repudiation does not apply to unilateral contracts, executory contracts for the payment of money, or where the complaining party has fully performed).  The Restatement Comments explain the scope of this doctrine as follows:

> If an obligor repudiates under § 250 [describing when a statement or act is a repudiation] or § 251 [describing when failure to give assurance may be treated as a repudiation] before he has received all of the agreed exchange for his promise, the repudiation alone gives rise to a claim for damages for total breach under Subsection (1).  The most important example of such a case occurs when performances are to be exchanged under an exchange of promises and one party repudiates a duty with respect to the expected exchange before the other party has fully performed that exchange.  However, it is one of the established limits on the doctrine of "anticipatory breach" that an obligor's repudiation alone, whether under § 250 or § 251, gives rise to no claim for damages at all if he has already received all of the agreed exchange for it.

Restatement (Second) of Contracts § 253, cmt. c.  The Comments further provide an apt illustration to this bar:

> On February 1, A and B make a contract under which, as consideration for B's immediate payment of $50,000, A promises to convey to B a parcel of land on May 1.  On March 1, A repudiates by selling the parcel to C.  On April 1, B commences an action against A.  Since A has received the $50,000, the agreed exchange for his duty to sell the parcel to B, B has no claim against A for damages for breach of contract until performance is due on May 1.

*Id.* cmt. c, illust. 4.  Although the Restatement recognizes that this result may seem

harsh, this rule "avoids difficult problems of forecasting damages."  *Id.* cmt. d.[7]

Applying these principles, given Plaintiff's claims that he has fully performed

under the policy and Defendants' time for performance has not yet arrived (*i.e.*,

Plaintiff has not yet passed away), Plaintiff may not yet bring an action for breach

of contract.[8]

　　　　The second approach provides a more reasonable approach to the

problem the Restatement creates of requiring an individual who has already fully

performed to wait until nonperformance of the other party.  In the specific context

---

[7]  The Restatement (Second) of Contracts § 253, comment d, further recognizes that "[a] court can often avoid harsh results [of making a plaintiff wait for the time of performance] by making available other types of relief, such as a declaratory judgment or restitution."  The availability of alternative relief, however, does not make Plaintiff's breach of contract claim timely.  And in any event, Plaintiff did not request equitable relief and such relief would not be available where Plaintiff waited decades to bring this action.

[8]  Plaintiff cites to *Washington Life Ins. Co. v. Lovejoy*, 149 S.W. 398 (Tex. App. 1912), to support his assertion that anticipatory repudiation applies to these facts, but *Lovejoy* is distinguishable because the insured had not fully performed because he was required to make annual premium payments.  *Id.* at 403-04.

　　The court also recognizes that *Fraconia Assocs. v. United States*, 536 U.S. 129, 144 (2002), applied the doctrine of anticipatory repudiation to hold that the statute of limitations for the plaintiff's breach of contract claim accrued upon the non-repudiating party's date of election.  *Fraconia* is also distinguishable.  At issue in *Fraconia* was whether newly-enacted legislation altering the prepayment terms of loan agreements between borrowers and the government was a breach or a repudiation.  *Id.* at 128.  *Fraconia* found that the legislation was a repudiation and not a breach -- the non-repudiating parties had not yet fully performed (*i.e.*, they had not attempted to prepay their loans), and the government's time for performance (acceptance of prepayments) had not yet ripened.  *Id.* at 142-44.  In comparison, Plaintiff asserts that he has fully performed under the policy.

of insurance policies, courts have found that even though the time for an insurer to pay out on the policy has not yet arrived, an insurer nonetheless breaches the policy, and triggers the statute of limitations, when it demands that the insured makes payments inconsistent with the insured's understanding of the policy terms. For example, in *Parkhill v. Minnesota Mutual Life Insurance Co.*, 286 F.3d 1051 (8th Cir. 2002), the insured purchased a life insurance policy from the insurer, along with assurances that the policy would maintain itself without any further out-of-pocket expenses. After almost ten years of receiving annual statements and other correspondence that contradicted these assurances, the insured brought suit for breach of contract in 1997. *Parkhill* affirmed the district court's determination that the breach of contract claim was untimely. *Parkhill* explained that the claim accrued no later than 1990 when the insurer required the insured to make payments that were inconsistent with the earlier assurances because at that point, the insured "should have been aware . . . that the policy was not performing as promised." *Id.* at 1056; *see also Del Vecchio v. Conseco, Inc.*, 788 N.E.2d 446, 450 (Ind. App. 2003) (holding that insured's breach of contract claim accrued when Plaintiff received his policy statements indicating that the policy would ultimately terminate without further payments, despite assurances that the policy would last indefinitely); *cf. Central States, Se. & Sw. Areas Pension Fund v. Basic Am. Indus.,*

*Inc.*, 252 F.3d 911, 915-16 (7th Cir. 2001) (criticizing the rule that anticipatory

repudiation does not apply where the plaintiff has already fully performed and

asserting in dicta that a party should nonetheless by allowed to take immediate

action).

That the breach of contract claim accrues upon the insurer's

inconsistent statements, as opposed to when performance is ultimately due, makes

common sense because it allows the insured, as opposed to his heirs, to bring suit,

and also allows a suit to commence while evidence and witnesses are still

available.[9]  Under this approach, however, Plaintiff did not bring this action in

1983 when Defendants requested premium payments that were contrary to

Plaintiff's understanding of the policy, or even when Defendants repeatedly

asserted to Plaintiff from 1997 through 2003 that the policy had terminated.  Thus,

this action, brought over twenty-five years after Defendants' demands for

additional payments and over ten years after Defendants confirmed to Plaintiff that

the policy was terminated, is time-barred under this approach.

In sum, under either approach, Plaintiff's breach of contract claim is

---

[9]  This case provides a good example of the perils of waiting to bring suit -- neither party
can produce a copy of the policy, and Wayburn has passed away.

not timely.[10]  The court therefore need not predict which approach the Hawaii Supreme Court would follow because either ends in the same result.

In opposition, Plaintiff argues that to the extent the statute of limitations began when Defendants asked for further premium payments and/or when Defendants told Plaintiff the policy was terminated, the statute of limitations should be tolled because (1) Plaintiff lacked the capacity to bring this action earlier due to illness; (2) Defendants fraudulently concealed this cause of action; and (3) Defendants "lulled" Plaintiff into not filing this action sooner by failing to provide Plaintiff documents.  The court rejects these arguments.

As to Plaintiff's argument that he was ill, Plaintiff has the burden to establish that he is entitled to equitable tolling, yet he has come forward with no evidence whatsoever supporting that illness prevented him from bringing this action.  *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005) ("Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.").[11]  Accordingly, there is no genuine issue of

---

[10]  The court does not determine at this time whether Plaintiff's heirs could bring a claim after Defendants fail to pay the policy proceeds upon Plaintiff's death.

[11]  Indeed, it appears that any illness Plaintiff suffers from has not stopped his ability to pursue his legal rights -- he has filed numerous actions in not only this court but also the Eastern District of Michigan, resulting in a vexatious litigant order entered against him in that District.

(continued...)

19

material fact that Plaintiff suffered any illness sufficient to toll the statute of limitations.[12]

As to Plaintiff's assertion that Defendants prevented him from learning of enough facts to bring this action, HRS § 657-20 states that where the defendant

> fraudulently conceals the existence of the cause of action . . . from the knowledge of the person entitled to bring the action, the action may be commenced at any time within six years after the person who is entitled to bring the same discovers or should have discovered, the existence of the cause of action . . . .

As used in § 657-20, fraudulent concealment means the "employment of artifice, planned to prevent inquiry or escape investigation, and [mislead] or hinder acquirement of information disclosing a right of action." *See Au*, 63 Haw. at 215, 626 P.2d at 178 (quotation and citation signals omitted); *see also Gast v. Kwak*, 396 F. Supp. 2d 1150, 1157 (D. Haw. 2005) (applying HRS § 657-20); *Nakamoto v. Hartley*, 758 F. Supp. 1357, 1364-65 (D. Haw. 1991) (citing *Au* and applying HRS § 657-20). In other words, fraudulent concealment requires that a plaintiff

---

[11](...continued)
*See Kersh v. Borden Chem., A Div. of Borden, Inc.*, 689 F. Supp. 1442, 1452 (E.D. Mich. 1988); *see also Kersh v. Am. Heart of Mich., Inc.*, 76 Fed. Appx. 648, 650 (6th Cir. 2003) (mentioning Plaintiff's "ongoing abuse of the judicial process").

[12] Nor has Plaintiff shown (or even argued) that HRS § 657-13 applies, which tolls the statute of limitations for infancy, insanity, and imprisonment.

show that a defendant acted affirmatively and fraudulently to conceal the cause of action.  *See Au*, 63 Haw. at 215, 626 P.2d at 178; *Gast*, 396 F. Supp. at 1157.

Plaintiff has failed to establish a genuine issue of material fact that any fraudulent concealment by Defendants prevented Plaintiff from learning of his cause of action.  Although Plaintiff argues that Defendants concealed "important information" from him, *see* Pl.'s Opp'n 5, 9, Plaintiff fails to present any evidence supporting that Defendants affirmatively withheld information that Plaintiff needed to understand that he had a cause of action.  Rather, the undisputed evidence establishes that regardless of whatever documents Plaintiff requested from Defendants, Defendants made clear their position on the policy such that Plaintiff should have been aware of his cause of action.  Specifically, by 1997 Plaintiff was aware that Defendants had terminated his policy and had even made express allegations that he had been "defrauded" or "lied to" to NALA and/or Manulife. Defs.' CSF ¶ 10.  By 1998, Plaintiff asserted that Defendants were defrauding him and began to threaten filing suit against Defendants regarding the policy.  *Id.* ¶¶ 13-14.  Given these facts, fraudulent concealment does not apply.

Finally, the court rejects Plaintiff's assertion that Defendants somehow "lulled" Plaintiff into failing to bring this action within the statute of limitations by failing to produce documents he requested.  *See* Pl.'s Opp'n 5.  In

general, "actions by a party tending to lull another into inaction and permit the statute of limitations to run against him [fall] within the lulling exception." *Cunha v. Ward Foods, Inc.*, 501 F. Supp. 830, 836 (D. Haw. 1980) (citing *Mauian Hotel, Inc. v. Maui Pineapple Co.*, 52 Haw. 563, 481 P.2d 310 (1971)). There is no evidence, however, that Defendants took any actions that would lull Plaintiff into inaction -- rather, the evidence establishes that Defendants consistently maintained their position that Plaintiff had received a whole life insurance policy and that the policy had lapsed. That Defendants failed to produce all of the documents requested by Plaintiff does not change that Plaintiff knew of Defendant's position that the policy had lapsed and therefore should have brought this action if he disagreed with Defendants.

The court therefore GRANTS Defendants' Motion for Summary Judgment on Plaintiff's breach of contract claim.

### 2.     Unfair Business Practices (Count II)

Defendants argue that Plaintiff's claim for violation of HRS § 480-2 is barred by the statute of limitations, and in opposition, Plaintiff asserts that equitable tolling applies. The court addresses these arguments in turn.

Claims brought pursuant to HRS Ch. 480 are generally subject to a four-year statute of limitations. Specifically, § 480-24(a) provides:

> Any action to enforce a cause of action arising under this
> chapter shall be barred unless commenced within four
> years after the cause of action accrues . . . . For the
> purpose of this section, a cause of action for a continuing
> violation is deemed to accrue at any time during the
> period of the violation.

This four-year period begins to run from the date of the occurrence of the violation, and not the date of discovery. *McDevitt v. Guenther*, 522 F. Supp. 2d 1272, 1289 (D. Haw. 2007).

NALA terminated Plaintiff's policy in 1984, and starting in 1997 Defendants responded to Plaintiff's inquiries regarding his insurance policy by explaining that Plaintiff had purchased a whole, not universal, life insurance policy. *See* Defs.' Exs. D, H, K, L, M. Further, there is no evidence suggesting that Defendants committed any violations of HRS § 480-2 in the four years preceding the filing of this action on February 4, 2009. Accordingly, Plaintiff's claims for violation of HRS § 480-2, filed twenty-five years after the policy was terminated and twelve years after Defendants denied that Plaintiff received a universal life insurance policy, are barred by HRS § 480-24's four-year statute of limitations unless Plaintiff can take benefit of any equitable principles tolling of the statute of limitations. As explained above, however, Plaintiff has not established a genuine issue of material fact supporting any equitable tolling

principle.[13]

The court therefore GRANTS Defendants' Motion for Summary

Judgment on Plaintiff's claim for violation of § 480-2 as time-barred.

### 3. *Misrepresentation (Count IV)*

A plaintiff must bring a misrepresentation claim within six years after

the cause of action accrues. *See* HRS § 657-1(4) (providing a six-year statute of

limitations for "[p]ersonal actions of any nature whatsoever not specifically

covered by the laws of the State"); *see also Eastman v. McGowan*, 86 Haw. 21, 27,

946 P.2d 1317, 1323 (1997). A cause of action on a tort claim such as this accrues

when the plaintiff knew or should have known of the defendant's alleged

misconduct and its connection to the plaintiff's injury. *See Hays v. City & County*

*of Honolulu*, 81 Haw. 391, 396, 917 P.2d 718, 723 (1996) (interpreting HRS §

657-7.3 and HRS § 657-7).

As explained above for Plaintiff's claim for violation of breach of

contract and § 480-2 claims, Plaintiff knew by 1997 that Defendants were asserting

that Plaintiff received a whole life insurance policy. Plaintiff disagreed with

---

[13]  Although this court has found that HRS § 657-20 does not apply to § 480-2 claims, fraudulent concealment principles still apply and mirror § 657-20's fraudulent concealment requirements. *See Rundgren v. Bank of N.Y. Mellon*, --- F. Supp. 2d. ----, 2011 WL 768800, at *6 (D. Haw. Feb. 28, 2011). Accordingly, the same general analysis above on Plaintiff's breach of contract claim would apply equally here.

Defendants, asserting that he was "defrauded" and "lied to" by Defendants. Accordingly, by this time Plaintiff knew or should have known of both Defendants' alleged misrepresentations and his resulting injuries. Further, as explained above, Plaintiff has established no genuine issue of material fact that any tolling principles apply. The court therefore GRANTS Defendants' Motion for Summary Judgment on Plaintiff's misrepresentation claim.

### 4.     *IIED (Count V)*

A plaintiff must bring an IIED claim within two years after the claim accrues. *See* HRS § 657-7 (providing that "an action for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued"); *Guillermo v. Hartford Life & Acc. Ins. Co.*, 986 F. Supp. 1334, 1336 (D. Haw. 1997) (finding that HRS § 657-7 applies to IIED claims). Similar to the misrepresentation claim, this cause of action accrues when Plaintiff "knew or should have known of the causal connection between the defendant's action and the damage done." *Guillermo*, 986 F. Supp. at 1336.

Viewing the evidence in a light most favorable to Plaintiff, the court finds no genuine issue of material fact that Plaintiff should have known of the connection between his emotional distress and Defendants' conduct much earlier

than within the two years preceding the filing of this action.  In 1998, Plaintiff was aware that NALA had terminated the policy in 1984 and Plaintiff explained that he "was really upset and emotional that they were trying to take my money and tell me I don't have a policy . . . .  I probably called them crooks.  They stole my money and they're defrauding me, and I was extremely upset that day."  Defs.' CSF ¶ 13.  Further, in 2003, Plaintiff alleged that "someone screwed around with this policy and faked it and lied to me" such that he became "extremely upset and really, really upset over this."  *Id.* ¶ 14.  These undisputed facts establish that Plaintiff was aware of Defendants' position that Plaintiff's policy had lapsed and he had connected (or certainly should have connected) his distress with Defendants' position.  Further, as explained above, Plaintiff has established no genuine issue of material fact that he is entitled to tolling of the statute of limitations.

The court therefore GRANTS Defendants' Motion for Summary Judgment as to Plaintiff's IIED claim.

///

///

///

///

# V.  **CONCLUSION**

Based on the above, the court GRANTS Defendants' Motion for

Summary Judgment.  The Clerk of Court is directed to close the case file.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 27, 2011.



/s/ J. Michael Seabright_____
J. Michael Seabright
United States District Judge

*Kersh v. Manulife Fin. Corp. et al.*, Civ. No. 09-00049 JMS/BMK, Order Granting Defendants'
Motion for Summary Judgment